EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Federation Des Industries De La Perfumerie<br><br>Recurrida<br><br>vs.<br><br>Ebel International Limited<br><br>Peticionario | Certiorari<br><br>2007 TSPR 212<br><br>172 DPR _____ |

Número del Caso: CC-2006-717


Fecha: 30 de noviembre de 2007


Tribunal de Apelaciones:

         Región Judicial de San Juan

Juez Ponente:

         Hon. Dolores Rodríguez de Oronoz

Abogados de la Parte Peticionaria:

         Lcda. Cristina Arenas Solís
         Lcdo. Federico Calaf Legrand

Abogado de la Parte Recurrida:

         Lcdo. Arturo Pérez-Guerrero


Materia: Revisión Administrativa procedente del Departamento de Estado.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Federation Des Industries
De La Perfumerie

 Recurrida

   vs.       CC-2006-717  CERTIORARI

Ebel International Limited

 Peticionaria

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 30 de noviembre de 2007

El 4 de diciembre de 2003, Ebel International Limited presentó, ante la División de Marcas de Fábrica del Departamento de Estado, una solicitud para el registro de la marca "Ebel Paris & Diseño" en la clase internacional número 3. Ebel International, compañía dedicada a la producción de maquillaje, preparaciones cosméticas, perfumería, productos para el cuidado personal, corporal y facial, está incorporada en la isla de Bermuda, es subsidiaria y la tenedora de las marcas del grupo corporativo Belcorp. A su vez, Belcorp es la corporación internacional encargada de la orientación estratégica, lanzamiento, publicidad y acceso a nuevos mercados de dichos productos, con sede en la ciudad de Lima, Perú.

El Departamento de Estado aprobó, preliminarmente, la solicitud de registro de la marca y el edicto correspondiente fue publicado el 27 de diciembre de 2003 en un periódico de circulación general en Puerto Rico.

La Federation des Industries de la Perfumerie (en adelante, FIP)[1] presentó una oposición a la solicitud de registro de la marca Ebel Paris, bajo el fundamento que ésta era geográficamente descriptiva, constituía una designación de origen falsa y por ende, era engañosa. A tales efectos, señaló que Ebel International es una corporación registrada en la isla de Bermuda y no en Paris. A su juicio, la alusión a Paris en el nombre pretendía vincular engañosamente el producto con la ciudad de Paris porque ésta es un lugar reconocido mundialmente por la calidad de los perfumes y productos de belleza producidos allí.

Ebel International formuló su contestación, arguyendo que Ebel Paris no es ni un nombre ni un término geográfico indicativo de la procedencia de los productos. No obstante lo anterior, sostuvo que tampoco constituía una designación de origen engañosa debido a que una subsidiaria de Belcorp, conocida como Ebel Internacional France, está localizada en Paris, Francia y contrata allí todo lo relativo a la elaboración, fabricación y suministro de los productos que

---

[1] La FIP es una federación organizada al amparo de las leyes de Francia. Sus miembros son asociaciones de empresas francesas dedicadas a la manufactura y venta de productos de perfumería, de belleza, cosméticos, para el cuidado del cuerpo y otros de índole similar.

llevan la marca Ebel Paris; por lo cual, el componente geográfico de la marca coincide con el lugar de procedencia de los productos y no existe una posibilidad de engaño al consumidor.

Por su parte, la FIP indicó que las oficinas centrales de Ebel International no están ubicadas en Paris ni sus productos son manufacturados en dicha Ciudad. Además, señaló que la ubicación de las oficinas de una subsidiaria era irrelevante al evaluar el origen geográfico de un producto, ya que lo determinante era el domicilio del solicitante y no el lugar de donde proceden los productos, y en éste caso, Ebel International estaba sita en Bermuda.

Nuevamente, Ebel International reiteró que sus productos eran manufacturados en Francia y por tanto, la marca no era engañosa. La vista en su fondo fue celebrada el 29 de marzo de 2005. El único testigo fue Ángel Acevedo Villalba, gerente corporativo de marcas y proyectos internacionales de Belcorp.

El 6 de junio de 2005, la FIP presentó un escrito urgente informándole al Departamento de Estado que la Oficina de Patentes y Marcas de Estados Unidos (U.S. Patent and Trademark Office, en adelante PTO) había denegado la solicitud de registro de la marca Ebel Paris presentada por Ebel International. Ésta, a su vez, replicó y expuso que la alegada denegatoria no era una determinación final sino preliminar, y su solicitud podría ser aprobada una vez se

subsanara cualquier deficiencia identificada por dicha oficina.

El 7 de noviembre de 2005, el oficial examinador rindió su informe. Determinó que, en vista de que los productos de la marca Ebel Paris no provenían de la ciudad de París, la marca era engañosa en cuanto al origen de los productos. En consecuencia, recomendó se declarara con lugar la oposición presentada por la FIP y se denegara la solicitud de registro de la marca Ebel Paris. El Departamento de Estado, mediante resolución de 15 de noviembre de 2005, acogió la recomendación del oficial examinador y rechazó la solicitud para el registro de la marca Ebel Paris.

Denegada su moción de reconsideración, e inconforme con la denegatoria de su solicitud de marca, Ebel International recurrió ante el Tribunal de Apelaciones solicitando la revocación de la resolución emitida por el Departamento de Estado. Adujo que dicho foro erró al concluir que el significado primario de la marca Ebel Paris, la cual se trataba de una marca compuesta, era el de una localización geográfica generalmente conocida. Además, planteó que el foro recurrido incidió al no concederle el peso necesario al hecho que los productos marca Ebel Paris tienen contactos suficientes con la ciudad de Paris.

El Tribunal de Apelaciones confirmó la resolución recurrida. Concluyó que la marca Ebel Paris era una marca compuesta y geográficamente engañosa. Tomando en cuenta que Ebel International es una compañía sita en Bermuda y es una

subsidiaria de Belcorp, ubicada en Perú, el tribunal concluyó que no tenía contactos suficientes con Paris. Igualmente, indicó que la existencia de una compañía subsidiaria en Francia no demostraba los contactos necesarios para justificar el uso del término Paris en la marca, razón por la cual, determinó que la marca Ebel Paris resultaba engañosa y podía generar confusión en la mente de los consumidores en torno al origen de los productos.

De tal decisión, Ebel Internacional recurrió ante este Tribunal --vía *certiorari*-- alegando que el Tribunal de Apelaciones incidió al concluir que:

> ...el significado de Ebel Paris es Paris y por ende la marca es geográficamente engañosa;

> ...la marca Ebel Paris no tiene contactos suficientes con la ciudad de Paris bajo el fundamento que Ebel France es una subsidiaria de Belcorp, corporación sita en Perú, y los productos marca Ebel Paris no son manufacturados en la ciudad de Paris.

<u>Expedimos</u> el recurso. Con el beneficio de la comparecencia de la partes, procedemos a resolver.

I

A

La Ley de Marcas de Fábrica, Ley Núm. 63 de 14 de agosto de 1991, 10 L.P.R.A. §171 *et. Seq.* (en adelante, Ley de Marcas), define una marca como "todo signo o medio que sirva para distinguir en el mercado productos o servicios de una persona, de productos o servicios de otra persona." Una

marca de fábrica persigue distinguir los productos del solicitante de otros productos en el mercado. Para cumplir dicho propósito, es necesario que la marca sea característica de los productos y los identifique como únicos en el mercado.

De conformidad con las disposiciones de la Ley de Marcas, el derecho sobre una marca se adquiere por el registro válido de ésta en el Departamento de Estado. Artículos 3 y 4 de la Ley de Marcas, 10 L.P.R.A. §171a y 171b. Sin embargo, en Arribas & Associates v. American Home Products, res. 14 de septiembre de 2005, 2005 TSPR 128, al interpretar el Artículo 3(b) de la Ley de Marcas, aclaramos que las marcas también se pueden adquirir por su uso. Como resultado de ello, el registro de una marca "sucumbirá ante la reclamación oportuna de quien tiene mejor derecho sobre la marca por haberla usado con anterioridad", aun cuando éste no la haya registrado. Igual norma ha sido establecida a nivel federal. Véase, entre otros, Allard Enterprises, Inc. V. Advanced Programming Resources, Inc., 249 F.2d 564 (6th Cir. 2001), Veryfine Products, Inc. v. Colón Brothers, Inc., 799 F.Supp. 240 (D. P.R. 1992).

Anteriormente, hemos señalado que existen diversos tipos de marcas que, dependiendo si son distintivas o no, son susceptibles de ser registradas. En Posadas de Puerto Rico v. Sands Hotel, 131 D.P.R. 21 (1992), distinguimos cuatro categorías de marcas, comenzando desde las inherentemente distintivas --y por tanto siempre

registrables-- hasta las que de ordinario no son registrables como marcas por no ser distintivas, a saber: (1) las arbitrarias o imaginables, (2) las sugestivas, (3) las descriptivas y (4) las genéricas.

Las marcas arbitrarias o imaginables no guardan relación alguna con el producto que identifican. Por un lado, las marcas imaginables emplean palabras inventadas por el comerciante que no existen en nuestro lenguaje porque carecen de definición en los diccionarios, tal como lo serían las marcas *Xerox* y *Kodak*. De otra parte, las marcas arbitrarias consisten de palabras comunes u ordinarias utilizadas para representar ciertos productos aun cuando no existe relación alguna entre el producto y el nombre de la marca, tal como el uso de *Dove* (ave) o *Ivory* (color) en referencia a jabones. La marca arbitraria no describe cualidades del producto. Posadas de Puerto Rico v. Sands Hotel, ante.

Por otro lado, las marcas sugestivas requieren el uso de la imaginación de parte del consumidor en torno a una característica del producto. En Posadas de Puerto Rico v. Sands Hotel, ante, ejemplificamos lo anterior aludiendo al uso de la marca "Caesars Palace" para un hotel, con el propósito de señalar la opulencia del nombre.

Distinto a las categorías de marcas antes descritas, las cuales tras ser registradas pueden ser utilizadas de forma exclusiva por el que las reclamó, las marcas descriptivas sólo pueden ser utilizadas con exclusividad

cuando han adquirido un significado secundario en el mercado. En Posadas de Puerto Rico v. Sands Hotel, ante, indicamos que "[s]e obtiene el significado secundario cuando el consumidor asocia la marca con los bienes de un producto en particular."

Por último, las marcas genéricas aluden al género o clase dentro del cual el producto particular es un espécimen. Éstas no son susceptibles de ser utilizadas por una persona de forma exclusiva cuando se usan para identificar un producto de dicho género; ni siquiera son registrables si adquieren un significado secundario. Incluso, una marca que inicialmente fue arbitraria o imaginable se puede convertir en genérica a través de su uso generalizado. Así, cuando la mayoría de los consumidores le otorgan un significado primario a dicha marca en relación al producto que representa, se convierte en un término genérico y no puede ser usado por una persona de forma exclusiva. Ejemplos de ello son los términos aspirina, "export soda" y thermos. Posadas de Puerto Rico v. Sands Hotel, ante.[2]

B

La Ley de Marcas se deriva del Lanham Act, 15 U.S.C.A. §1051 et. Seq, estatuto que regula el derecho de marcas en el ámbito federal. Aun cuando dicha legislación coexiste con

---

[2] Los tribunales federales también han identificado categorías de marcas iguales a las antes reseñadas. Véase Leelanau Wine Cellars v. Black & Red, Inc., 2007 Fed. App. 0384P (6th Cir. 2007); Jewish Shepardic Yellow Pages v. DAG Media, 478 F. Supp. 2d 340 (E.D. NY).

las leyes estatales sobre marcas, de surgir un conflicto entre las disposiciones estatales y las federales, el Lanham Act ocupa parcialmente el campo del derecho de marcas y la disposición estatal conflictiva carece de validez. Arribas & Assoc. v. American Home Products, ante.

Por dicha razón, en ocasiones previas hemos destacado que la jurisprudencia interpretativa del Lanham Act tiene gran valor persuasivo al interpretar las disposiciones de nuestra Ley de Marcas. Posadas de Puerto Rico v. Sands Hotel, ante.

Originalmente, la Sección 2 del Lanham Act, 15 U.S.C.A. §1052, disponía:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it--
>
> (a) Consists of or comprises immoral, deceptive, or scandalous matter…
>
> (e) Consists of a mark which …
> (2) when used on or in connection with the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them.
> …
> (f) Except as expressly excluded in paragraphs (a)-(d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.
> … (Énfasis suplido.)

A través del North American Fair Trade Agreement (NAFTA), Dec. 17, 1993, art. 1712, 32 I.L.M. 605, se introdujeron enmiendas al Lanham Act las cuales alteraron la Secciones 2(e) y 2(f) antes citadas, en torno a los criterios a utilizarse al atender solicitudes para el

registro de las marcas denominadas "primarily geographically descriptive" --principalmente geográficamente descriptivas-- y las "primarily geographically deceptively misdescriptive".[3] Sobre el particular, la Corte de Apelaciones para el Circuito Federal[4] destacó "[t]his treaty shifts the emphasis for geographically descriptive marks to prevention of any public deception." In re California Innovations, Inc., 329 F.3d 1334 (Fed. Cir. 2003), 66 U.S.P.Q.2d (BNA) 1853. McCarthy define una marca geográficamente descriptiva como "any noun or adjective that designates geographical location and would tend to be regarded as buyers as descriptive of the geographic location of origin of the goods or services." 2 McCarthy on Trademarks and Unfair Competition, 4th Ed., §14:2.

Por su parte, las marcas denominadas "primarily geographically deceptively misdescriptive" son aquellas cuyo significado primario es una localización geográfica comúnmente conocida, lo cual induce a los consumidores a creer, erradamente, que dicha localización es el lugar de origen de los productos, y tal designación de origen falsa

---

[3] Para facilitar la discusión, utilizaremos el término en inglés ya que la traducción no retiene el significado que le otorga el Lanham Act y la jurisprudencia interpretativa.

[4] La Corte de Apelaciones para el Circuito Federal (United States Court of Appeals for the Federal Circuit) fue creada al amparo del Artículo III de la Constitución de los Estados Unidos de América. Tiene jurisdicción, entre otros, sobre los casos de marcas y las revisiones administrativas provenientes del Trademark Trial and Appeals Board (TTAB), foro ante el cual la parte afectada adversamente recurre de las determinaciones del Patent and Trademark Office (PTO).

es un <u>elemento material</u> para los consumidores al decidir si adquieren los productos. Véase <u>In re California Innovations</u>, ante.

Previo al NAFTA, la solicitud de inscripción de las marcas principalmente geográficamente descriptivas y de las "primarily geographically deceptively misdescriptive" bajo la Sección 2(e)(2) del Lanham Act, eran denegadas preliminarmente y ubicadas en un "Supplemental Register" o registro suplementario, hasta tanto el solicitante demostrara que, en el mercado, la marca propuesta se había tornado distintiva ("distinctive") de sus productos bajo la Sección 2 (f) y el público así lo reconocía. Por lo cual, el Lanham Act proveía el mismo tratamiento para ambos tipos de marcas. Para lograr acceso al registro, lo esencial era demostrar un "acquired distinctiveness" --que adquirió un carácter distintivo--, o "secondary meaning" --significado secundario-- bajo la Sección 2(f).

Por el contrario, toda solicitud de inscripción de una marca engañosa o "deceptive" era denegada de plano por ser inherentemente fraudulenta al amparo de la Sección 2(a). Las marcas "geographically deceptive" --geográficamente engañosas-- eran denegadas bajo tal disposición. No existía la posibilidad de registrar una marca geográficamente engañosa mediante la demostración de un "secondary meaning". Por lo cual, el registro de marcas geográficamente engañosas estaba terminantemente prohibido bajo dicha sección.

En vista de que tal denegatoria era final, era más difícil para el PTO demostrar que una marca era geográficamente engañosa bajo la Sección 2(a). Ese tipo de caso exigía un *quantum* mayor de prueba que la que se requería para determinar que una marca era principalmente geográficamente descriptiva o "primarily geographically deceptively misdescriptive" bajo la extinta Sección 2(e)(2). In Re California Innovations, Inc., ante.

No obstante las enmiendas sufridas por el NAFTA, la Sección 2(a) del Lanham Act que proscribe la inscripción de marcas geográficamente engañosas y engañosas *per se*, permaneció inalterada. Ello reafirmó el interés de evitar el engaño o fraude al consumidor en la inscripción de marcas. Así, en la actualidad, una marca engañosa nunca puede ser registrada. In Re California Innovations, Inc., ante.

Ahora bien, la Sección 2(e)(2) del Lanham Act fue alterada sustancialmente y actualmente dispone:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it --
> […]
> (e) Consists of a mark which (1) when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them, (2) when used on or in connection with the goods of the applicant is primarily geographically descriptive of them, except as indications of regional origin may be registrable under section 4 [*15 USCS § 1054*], (3) when used on or in connection with the goods of the applicant is primarily geographically deceptively misdescriptive of them…
>
> (f) Except as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing herein shall prevent the registration of a

<u>mark used by the applicant which has become
distinctive of the applicant's goods in commerce.</u>
The Director may accept as prima facie evidence that
the mark has become distinctive, as used on or in
connection with the applicant's goods in commerce,
proof of substantially exclusive and continuous use
thereof as a mark by the applicant in commerce for
the five years before the date on which the claim of
distinctiveness is made.  Nothing in this section
shall prevent the registration of a mark which, when
used on or in connection with the goods of the
applicant, is primarily geographically deceptively
misdescriptive of them, and which became distinctive
of the applicant's goods in commerce <u>before the date
of the enactment of the North American Free Trade
Agreement Implementation Act</u> [enacted Dec. 8, 1993].
A mark which would be likely to cause dilution by
blurring or dilution by tarnishment under section
43(c) [*15 USCS § 1125(c)*], may be refused
registration only pursuant to a proceeding brought
under section 13 [*15 USCS § 1063*]. A registration
for a mark which would be likely to cause dilution
by blurring or dilution by tarnishment under section
43(c) [*15 USCS § 1125(c)*], may be canceled pursuant
to a proceeding brought under either section 14 or
section 24 [*15 USCS § 1064 or 1092*].(Énfasis
suplido.)

Como puede observarse, la antigua Sección 2(e)(2) fue
dividida en dos incisos. El nuevo inciso 2(e)(2) regula la
inscripción de las marcas denominadas principalmente
geográficamente descriptivas o "primarily geographically
descriptive". Éstas son registrables en el registro
principal si el solicitante demuestra que la marca ha
adquirido un significado secundario bajo la sección 2(f). En
la alternativa, el solicitante puede solicitar el registro
preliminar de la marca en el registro suplementario hasta
tanto demuestre que ésta ha adquirido un significado
secundario.

Aunque no existe consenso en torno a los elementos a considerarse al determinar si una marca ha adquirido un significado secundario, es bien sabido que se configura cuando el público no asocia el producto con el lugar particular de origen sino exclusivamente con la marca, el manufacturero del producto y la calidad de sus productos. Sobre el particular, McCarthy entiende que "[t]he doctrine of secondary meaning requires that a geographically descriptive term, like any other descriptive symbol, be associated with a particular source in buyers' minds before any trademark significance may be attached to the term." McCarthy §14:7, 14:9, 15:11; Leelanau Wine Cellars v. Black & Red, Inc., ante; Daesang Corp. v. Rhee Brothers, 77 U.S.P.Q.2D BNA 1753 (D. MD 2005); Star Industries v. Bacardi & Co., 412 F.3d 373 (2nd Cir. 2005); Commerce National Insurance Services, Inc. v. Commerce Insurance Agency, Inc., ante; Forschner Group Inc. v. Arrow Trading Co. Inc., 30 F.3d 348 (2nd Cir. 1994).[5]

---

[5] Para ello, han exigido la presentación de prueba sobre ciertos elementos, tales como, si la marca ha sido utilizada en el mercado por un periodo de tiempo sustancial, los gastos incurridos en la publicidad y mercadeo de la marca, el volumen de ventas, la existencia de una asociación entre la marca y el origen del producto en la mente de los consumidores, así como "unsolicited media coverage of the product", "attempts to plagiarize the mark" y "the exclusivity of the mark's use". Leelanau Wine Cellars v. Black & Red, Inc., ante; Daesang Corp. V. Rhee Brothers, ante; Jefferson Bankshares v. Jefferson Savings Bank, 1989 U.S. Dist. LEXIS 16165; 14 U.S.P.Q.2D (BNA) 1443 (W.D. VA 1989); Burke-Parsons Corp. v. Appalachian Log Homes, 871 F.2d 590 (6th Cir. 1989).

Así, una marca geográficamente descriptiva adquiere un significado secundario cuando, a través de su uso en el comercio, se le asocia exclusivamente con unos productos particulares y la fuente de éstos, más no una localización geográfica particular. Commerce National Insurance Services, Inc. v. Commerce Insurance Agency, Inc., 214 F.3d 432 (3rd Cir. 2000).

Distinto a las marcas geográficamente descriptivas, la Sección 2(f) ahora prohíbe el registro, tanto en el registro preliminar como en el principal, de las marcas "primarily geographically deceptively misdescriptive" bajo el inciso (e)(3). Ya no cabe la posibilidad de demostrar que ésta ha adquirido un significado secundario que justifique su registro.

En resumidas cuentas, para efectos de la inscripción de una marca, el NAFTA eliminó la distinción entre las marcas clasificadas como geográficamente engañosas o "geographically deceptive" bajo la Sección 2(a) y las "primarily geographically deceptively misdrescriptive" bajo la Sección 2(e)(3), en tanto extendió la prohibición del registro preliminar a ésta última. Consecuentemente, en la actualidad, las marcas "primarily geographically deceptively misdrescriptive" ya no son susceptibles de tornarse distintivas (distinctive) o adquirir un significado secundario, según lo permitía la antigua Sección 2(f) y, por tanto, no son inscribibles de forma preliminar ni permanente. McCarthy §14:31, 14:37.

Ante la eliminación de la posibilidad de inscribir una marca "primarily geographically deceptively misdrescriptive" de forma preliminar, ahora el NAFTA exige un estándar legal más estricto para la evaluación de ese tipo de solicitud de registro, para así asegurar la protección de los intereses del solicitante y a la vez evitar el engaño de los consumidores. In Re California Innovations, Inc., ante.

Adviértase que para denegar la inscripción de una marca, en cualesquiera de los supuestos ante su consideración, le corresponde al PTO demostrar que ésta no es registrable, ya sea porque (1) es geográficamente descriptiva ("primarily geographically descriptive") y no posee un significado secundario, (2) es "primarily geographically deceptively misdescriptive" o (3) engañosa *per se* ("deceptive"). Del mismo modo, le corresponde evaluar si procede su registro preliminar cuando ello fuere posible al amparo de la Sección 2(f). McCarthy §14:26.

C

En aras de conciliar los cambios introducidos por el NAFTA, la Corte de Apelaciones para el Circuito Federal creó e implementó un examen ("three-prong test") para determinar cuando procede denegar el registro de una marca por ésta ser "primarily geographically deceptively misdrescriptive" bajo la Sección 2(e)(3).

En esencia, el PTO debe denegar la inscripción bajo dicho fundamento cuando: (1) el significado primario de la

marca es una localización geográfica comúnmente conocida; (2) el público consumidor cree que dicha localización es el lugar de origen de los productos o bienes en cuestión cuando en realidad éstos no provienen del mismo; y (3) tal creencia errada es un factor esencial o material para el consumidor al decidir si adquiere el producto o bien. In re California Innovations, ante.

La asociación o conexión creada en la mente de los consumidores, entre la marca y la localización geográfica, ha sido denominada el "goods/place association". El PTO no puede denegar la inscripción de una marca sin antes demostrar que en efecto existe un "goods/place association", y éste es un elemento material en la decisión del consumidor de adquirir el producto. Véase: In re Les Halles de Paris J.V., 334 F.3d 1371 (2003); In Re California Innovations, Inc., 329 F.3d 1334 (2003); Daesang Corp. V. Rhee Brothers, 77 U.S.P.Q.2D BNA 1753 (D. MD 2005), In re Hiromichi Wada, 194 F.3d 1297 (1999); McCarthy §14:33. Para ello, es suficiente con demostrar que los consumidores identifican la localización geográfica como el lugar de origen de los productos. In re Les Halles de Paris J.V., ante.

Una vez el PTO concluye que existe un "goods/place association", debe determinar si dicha asociación resulta engañosa. Sólo denegará la inscripción de una marca cuando el "goods/place association" es un factor material para el consumidor al decidir si adquiere el producto y lleva a éste a adquirir un producto bajo la creencia falsa de que

proviene de una localización geográfica particular, señalada en la marca, <u>cuando ese no es su origen verdadero</u>. Véase McCarthy §14:33. Adviértase que el enfoque principal del NAFTA y el Lanham Act es evitar el uso de marcas engañosas o fraudulentas. <u>In Re California Innovations, Inc.</u>, ante.

Recalcamos que, si los productos provienen de la localización geográfica, aun cuando exista un "goods/place association", no existe probabilidad de engaño al consumidor.

## II

Resulta primordial en la consideración del presente caso destacar que la distinción lingüística entre las marcas geográficamente engañosas, las marcas geográficamente descriptivas y las marcas "primarily geographically deceptively misdescriptive" no es mero capricho, sino que delimita distinciones inequívocas trazadas en la ley y la jurisprudencia. Ello como consecuencia de los requisitos y efectos diversos de cada clasificación. Recuérdese que se prohíbe tajantemente el registro de las marcas geográficamente engañosas bajo la Sección (a) y la de las marcas "primarily geographically deceptively misdescriptive" bajo la Sección (e)(3), mientras las marcas geográficamente descriptivas bajo la Sección (e)(2) pueden ser registradas si se demuestra que han adquirido un significado secundario o preliminarmente hasta tanto se demuestre un significado secundario. Como consecuencia de ello, <u>no</u> son términos intercambiables entre sí. <u>Tomando en cuenta lo anterior, es</u>

preciso enfatizar que las partes no han delimitado tales diferencias claramente y, al argumentar sus respectivas posiciones, encontramos inconsistencias en torno al fundamento de derecho en que basan sus alegaciones. Del mismo modo, los foros recurridos han confundido el derecho aplicable a la controversia ante nos. Veamos.

En su petición de *certiorari*, Ebel International sostiene que Ebel Paris es una marca compuesta cuyo significado principal es Ebel y no Paris. Como consecuencia de ello, alega que la alusión a la ciudad de Paris no es un elemento dominante, ni el que le distingue de otros productos similares en el mercado. Así, pues, concluye que Ebel Paris no es una marca geográficamente engañosa. En apoyo a su argumento, indica que el logo lleva la palabra Paris debajo de la palabra Ebel y en un tamaño mucho más pequeño, evidenciando que la alusión a dicha ciudad es un elemento de segundo plano. Además, resalta que existen otras marcas que incluyen Paris en su nombre, por lo cual, lo que las distingue entre sí no es la alusión a Paris sino la fama y calidad del producto en particular, ya sea Ebel, L'Oreal o cualquier otro.

Por otro lado, Ebel International alega que Ebel France, sita en la ciudad de Paris, recibe las órdenes de compra de parte de Belcorp, y controla la calidad y manufactura de los productos Ebel Paris. Además, Ebel France obtiene los contactos y contrata a los proveedores, los

maquiladores[6] y ensambladores que manufacturan los productos. Por lo cual, a su juicio, existen contactos suficientes con la ciudad de Paris. También indica que la mayoría de los perfumes producidos en Francia no se manufacturan en Paris, sino en centros de producción ubicados alrededor de dicha ciudad, y aun así, el término Paris ha sido utilizado en las marcas que representan tales productos.

En oposición a todo lo anterior, la FIP reitera que la marca Ebel Paris es geográficamente engañosa porque los productos no provienen de dicha ciudad. En apoyo a tal contención, alude a la Sección 2(e)(3) del Lanham Act sobre las marcas "primarily geographically deceptively misdescriptive". También utiliza los mismos criterios a los cuales aludió el Departamento de Estado para concluir que el significado primario de la marca Ebel Paris es geográfico y por tanto, ésta es engañosa. De otra parte, enfatiza que la sede corporativa de Ebel International es Belcorp, corporación peruana, por lo cual, la marca Ebel Paris proviene de dicho país. Sobre el particular, indica que el registro de la referida marca ha sido denegado en diversos países latinoamericanos por tal motivo, e igual curso debe seguirse en Puerto Rico.

---

[6] Según la Real Academia Española, maquilar se define como importar materias primas, tratarlas y exportarlas. El gerente de marcas y proyectos internacionales de Belcorp indicó que maquila es cuando una planta fabrica para un tercero.

Del expediente ante nuestra consideración surge que, al evaluar si la marca Ebel Paris es engañosa, el oficial examinador utilizó los siguientes criterios: (1) si el significado primario de la marca es una localización geográfica generalmente conocida; (2) si los bienes para los cuales Ebel International solicita el registro se originan en el lugar identificado en la marca; (3) si los compradores, con toda probabilidad, creerían que los bienes de servicio se originan en el lugar geográfico que se menciona en la marca; y (4) si la representación engañosa fue un factor material en la decisión de los compradores de adquirir los productos en cuestión.

En torno al primer elemento, el oficial examinador destacó que no existe controversia en torno a que Paris es una localización geográfica conocida. Además, indicó que la inclusión de la palabra Ebel no suprime ni minimiza la presencia de la palabra Paris. Tampoco subsana el posible engaño generado por el uso de la palabra Paris, en tanto los consumidores pueden adquirir el producto bajo la creencia de que los productos provienen de dicha ciudad.

En cuanto al segundo criterio, el oficial examinador determinó que, según la prueba testifical y documental sometida ante su consideración, resulta claro que los productos que elabora y compra Ebel International se producen en diversas regiones de Francia, más no en la ciudad de Paris.

Finalmente, en torno al tercer y cuarto criterio señalado, el oficial examinador concluyó que ante el renombre de Paris como el centro mundial de perfumes y productos cosméticos, cualquier alusión a dicha ciudad en una marca puede llevar al consumidor a creer que el producto proviene de allí y es de calidad superior. En vista de que los productos de Ebel Paris no provienen de tal ciudad, la inclusión de la palabra Paris en la marca la torna engañosa.

Bajo fundamentos similares, el Tribunal de Apelaciones confirmó la resolución del Departamento de Estado que declaró con lugar la oposición al registro presentada por la FIP. Determinó que la marca Ebel Paris era "primordialmente geográficamente descriptiva de manera engañosa" bajo la Sección 2(e)(3) del Lanham Act y por tanto, no era registrable. Señaló que los productos de Ebel Paris no provienen de la ciudad de Paris, ciudad reconocida mundialmente por la producción de productos de belleza de alta calidad. Además, sostuvo que Ebel International tampoco llevaba a cabo algún tipo de investigación, desarrollo, producción, ensamblaje, envasaje y embalaje de sus productos en Paris. Incluso, señaló que todo lo relativo a la publicidad de los productos se realizaba desde las oficinas de Belcorp en Perú. Así, la inclusión de la palabra Paris, con el propósito de evocar la ilusión de belleza y estilo parisino, ciertamente induciría a los consumidores a adquirir los productos bajo la creencia falsa de que eran producidos en dicha ciudad. Por último, el Tribunal de

Apelaciones indicó que Ebel Paris era una marca compuesta, integrada de una palabra imaginaria – Ebel y un término geográfico – Paris, cuyo significado primario era geográfico.

## III

Nos corresponde evaluar, en primer término, el método utilizado por el oficial examinador al emitir su determinación final. De las conclusiones de derecho formuladas por el oficial examinador podemos inferir que éste aplicó únicamente, y de forma modificada, el examen establecido en In re California Innovations, ante, para determinar si una marca es "primarily geographically deceptively misdescriptive" bajo la Sección 2(e)(3) del Lanham Act. También aludió a los Incisos (1), (4) y (7) del Artículo 5(a) de la Ley de Marcas.

Es preciso señalar, además, que tanto la FIP en su alegato en oposición como el oficial examinador en su recomendación, erraron al aludir al Inciso (7) del Artículo 5 de la Ley de Marcas, el cual se refiere a la prohibición de registrar cualquier

> marca que sea idéntica a otra marca ya inscrita o conocida que pertenezca a otro y que se use en productos o servicios de las mismas propiedades descriptivas o que tanto se asemeje a la marca perteneciente a otro, que sea muy probable que ocasione confusión o equivocación en la mente del público o de lugar a engaño de los consumidores.

En el ámbito federal, ello se conoce como el "likelihood of confusion" discutido en la Sección 2(d) del

Lanham Act, 15 U.S.C.A. § 1052(d). Ésta prohíbe el registro de una marca "which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."

Sin embargo, en la resolución del Departamento de Estado <u>no</u> se señala que esté registrada o en proceso de registro alguna marca igual o similar a Ebel Paris que genere tal probabilidad de confusión. Las partes tampoco lo han planteado. Claramente, el oficial examinador intentaba enfatizar la necesidad de evitar el engaño a los consumidores, pero el Inciso (7) abarca dicho tema en el contexto de una solicitud de registro de una marca que es idéntica a otra marca ya inscrita.

Ello no obstante, tal disposición no es de aplicación a la controversia que aquí nos concierne, a saber, si la marca Ebel Paris es "primarily geographically deceptively misdescriptive", término que, cabe destacar, no es equivalente al de una marca geográficamente engañosa, regulada por la Sección 2(a) del Lanham Act.

Lo anteriormente expresado nos lleva a considerar las disposiciones de la Ley de Marcas que inciden sobre el asunto que hoy resolvemos. El Artículo 5 (a)(4) de la Ley de Marcas, 10 L.P.R.A. §171c, establece que no se registrará ninguna marca que consista en palabras descriptivas de los

productos que representa. A su vez, el Inciso (a)(5) del referido artículo prohíbe el registro de palabras que indican el género, especie, naturaleza, calidad o forma de los productos. Por último, el Inciso (a)(6) proscribe el registro de una marca que contenga nombres o términos geográficos que indiquen la procedencia o el origen de los productos que representa.

No obstante lo anterior, el Inciso (b) del Artículo 5 dispone que las marcas mencionadas en los Incisos (4) al (6) antes citados podrán ser inscritas cuando han adquirido "para los productos o servicios para los cuales se solicite el registro, un carácter distintivo como consecuencia del uso que se ha hecho de la[s] misma[s]" en el mercado. Dicha disposición es equivalente a la exigencia federal de un significado secundario o "secondary meaning" habilitado por la Sección 2(f) del Lanham Act.

Claramente, los Incisos (a)(4) y (a(6) del Artículo 5 proscriben el registro de una marca descriptiva así como aquella indicativa del lugar de origen de los productos, salvo cuando éstas han adquirido un carácter distintivo o significado secundario en el mercado.

Aún bajo el supuesto que la marca Ebel Paris fuere catalogada como geográficamente descriptiva --ya sea bajo el Artículo 5(a)(4), (a)(6) o la Sección 2(e)(2) del Lanhan Act, por ser indicativa del lugar de origen de los productos-- según planteó la FIP en su oposición al registro de la marca, ésta ciertamente sería registrable en tanto ha

adquirido un "carácter distintivo como consecuencia del uso que se ha hecho de la misma", conforme dispone el Artículo 5(b) de la Ley de Marcas, así como su contraparte federal, la Sección 2(f) del Lanham Act. En la página de Internet de Ebel (www.ebelparis.com), aparece la palabra Ebel en letras grandes y la palabra Paris debajo de ésta, en letras más pequeñas, igual que la marca propuesta. Surge que los productos son vendidos en Estados Unidos, Francia, Argentina, Bolivia, Chile, Colombia, Costa Rica, Ecuador, El Salvador, Guatemala, Méjico, Perú, Puerto Rico, República Dominicana y Venezuela. No existe duda que la marca ha sido utilizada de forma continua en Estados Unidos. Actualmente, los productos Ebel Paris son mercadeados y vendidos en Puerto Rico y demás países antes mencionados.

Por su parte, el testigo Acevedo Villalba declaró que la compañía filial en Puerto Rico, Ventura Corporation, fue creada por Ebel International y ha trabajado con la marca Ebel Paris por cinco años en nuestro país con resultados exitosos. Igualmente indicó que las ventas de Ebel International ascienden los $700 millones de dólares anualmente a nivel mundial, de los cuales el mercado puertorriqueño genera alrededor de $50 millones anuales.

Por otro lado, al evaluar la naturaleza de la marca Ebel Paris, es evidente que el término Ebel por sí solo ciertamente constituiría una marca imaginable, ya que se trata de una palabra creada con el único propósito de representar los productos en cuestión. Las marcas

arbitrarias o imaginables, conocidas en lo federal como "arbitrary" o "fanciful" respectivamente, han sido catalogadas como "inherently distinctive". Ello en vista que una marca imaginable fue creada con el único propósito de servir como marca. Consecuentemente, distinto a lo que ocurre con las marcas descriptivas, para su inscripción no se requiere que el solicitante demuestre un significado secundario. Véase McCarthy §11:1-11:2, 11:4-11:8.

Sin embargo, no existe controversia en torno a que Ebel Paris es una marca compuesta. Una marca compuesta es aquella que combina palabras que pueden ser utilizadas de forma independiente. En aras de determinar si el significado primario de una marca compuesta es una localización geográfica, ésta debe ser evaluada en su totalidad. In re Save Venice New York, Inc., 259 F.3d 1346, 59 U.S.P.Q. 2D BNA 1778 (Fed. Cir. 2001); Véase McCarthy §14:11. Según bien señaló la Corte de Apelaciones para el Noveno Circuito, citando a McCarthy §14:6, "a composite geographical mark should not be dissected into its parts to determine whether it is primarily geographical or not.  It is the likely reaction of customers to the total mark that is at issue." California Cooler v. Loretto Winery, 774 F.2d 1451 (9th Cir. 1985). Así, pues, no podemos analizar la marca Ebel Paris de forma fragmentada.

Ahora bien, la inclusión de un término geográfico no impide que la marca sea registrable. McCarthy §11:59, 14:1. De una parte, aunque sea geográficamente descriptiva, puede

registrarse si posee un significado secundario o una vez se demuestre que ha adquirido un significado secundario. Del mismo modo, si el uso del término geográfico es arbitrario, en tanto su inclusión en la marca no lleva a los consumidores a creer que tal lugar es el origen de los productos ni describe sus cualidades, es innecesario demostrar un significado secundario porque posee el "inherent distinctiveness" que cobija a las marcas arbitrarias.

La Corte de Apelaciones Federal para el Segundo Circuito ha destacado que "[t]he fact that a composite phrase contains a geographical term does not necessarily mean that the phrase, viewed as a whole, is a geographic designation. The question is whether the phrase can be construed to mean that the product is made in a certain locale." Forschner Group Inc. v. Arrow Trading Co. Inc., ante.

Una marca compuesta que contiene un término inherentemente distintivo --en este caso uno imaginable-- y un término que no es distintivo, geográfico, podría, al evaluarse en su totalidad, tornarse en distintivo (acquired distinctiveness) a causa de la combinación de ambos términos. McCarthy §15:67. Ahora bien, el solicitante debe renunciar (disclaim) al uso del término que, de ser utilizado por sí solo, no sería inscribible. McCarthy §19:63.

Sin embargo, adviértase que cuando la denegatoria de la inscripción de una marca compuesta se basa en que ésta es geográficamente engañosa bajo la Sección 2(a) del Lanham Act o "primarily geographically deceptively misdescriptive" bajo la Sección 2(e)(3), tal defecto no puede subsanarse mediante un "disclaimer" o renuncia a la exclusividad sobre el término geográfico, ya que la marca resulta engañosa de su faz. McCarthy §14:31, §19:64, citando a In re Hiromichi Wada, ante.

En resumen, un término geográfico es registrable cuando se utiliza como una marca arbitraria y no existe un "goods/place association" en la mente del consumidor entre el producto y el lugar mencionado. Igualmente, si el elemento geográfico de una marca coincide con el lugar de procedencia de los productos, no cabe hablar de que la marca es engañosa. No obstante, cuando la localización geográfica utilizada en la marca es reconocida por la producción de productos iguales o similares a los que representa la marca, y ese no es el origen de los productos en cuestión, la marca indudablemente es engañosa porque el consumidor adquirirá los productos bajo la creencia falsa de que provienen del lugar señalado en la marca.

IV

En vista de todo lo anterior, nos corresponde evaluar la marca Ebel Paris a la luz del examen establecido en In re California Innovations, ante, para determinar si es una

marca "primarily geographically deceptively misdescriptive".
Según señalamos anteriormente, <u>el primer paso requiere
evaluar si el significado primario de la marca en cuestión
es una localización geográfica conocida</u>.

Indudablemente, Paris no es una localización obscura o
desconocida, sino por el contrario, es una ciudad de
renombre a nivel mundial. En particular, es reconocida,
entre otras cosas, por ser el lugar de origen de productos
de belleza de gran fama y calidad. Sin embargo, el
<u>significado primario</u> de la marca Ebel Paris <u>no es
geográfico</u>. Nos explicamos.

Según bien señala Ebel International, de eliminarse la
palabra Paris, la marca retendría su significado primario:
Ebel. No obstante, tomando en cuenta que se trata de una
marca compuesta, debemos evaluar el significado primario de
Ebel Paris en su totalidad. En primer término, al observar
la marca propuesta, el consumidor contempla que la palabra
Ebel resalta a la vista en letras grandes y mayúsculas. Por
el contrario, la palabra Paris se ubica debajo de la palabra
Ebel, en letras más pequeñas y de menor grosor.

Ebel International destaca, acertadamente, que el
propósito principal de una marca es identificar un producto
particular y su fuente, diferenciándolo de otros productos
en el mercado. Es evidente que los consumidores compran los
productos de Ebel Paris por la marca en su totalidad y no
meramente porque incluye la palabra Paris. Como
consecuencia, resulta claro que el significado primario de

la marca es la fama y calidad de los productos Ebel Paris. La marca Ebel Paris se diferencia de marcas cuyo registro ha sido denegado, tales como "The Venice Collection" y "New York Ways Gallery", en tanto el significado primario de éstas era una localización geográfica conocida y sus productos no provenían de dicho lugar. Véase In re Save Venice New York, Inc., ante, In re Hiromichi Wada, ante.

Del testimonio de Acevedo Villalba surge que la inclusión de la palabra Paris respondió a motivaciones relacionadas al mercadeo del producto. Así, pues, aunque la palabra Paris tenía el propósito de realzar la calidad de los productos, descansando en la reputación internacional que posee dicha ciudad en la manufactura de productos de belleza, los productos efectivamente son manufacturados en Francia.

Ha sido reconocido que algunas localizaciones geográficas son utilizadas como marcas por motivo de su renombre o fama, lo cual a su vez realza la calidad de sus productos. McCarthy §14:36. Indudablemente, Paris es una ciudad conocida mundialmente como el lugar de origen de numerosos productos de belleza de la más alta calidad y reputación. La inclusión del término Paris en una marca de productos de belleza ciertamente alude a la fama de dicha ciudad y podría llevar a un consumidor a adquirir el producto por tal motivo. Sin embargo, cuando existe una conexión entre los productos y la localización geográfica en cuestión, no se genera tal probabilidad de engaño. Somos del

criterio que los productos Ebel Paris y Ebel International tienen vínculos suficientes con la ciudad de Paris. Veamos.

Acevedo Villalba declaró que es gerente corporativo de marcas y proyectos internacionales de Belcorp, corporación organizada bajo las leyes del Perú. Al expandir sus negocios internacionalmente, desarrollaron Ebel International, compañía que denominó como "matriz" con sede legal en Bermuda, por razón de los incentivos tributarios y su localización geográfica de acceso fácil a nivel internacional. Al definir las funciones de cada ente corporativo, indicó que Belcorp es la encargada de la orientación estratégica para el lanzamiento de los productos, la publicidad, la plataforma de acceso a los mercados nuevos y las políticas de venta. Adviértase que ninguna de estas funciones incide directamente sobre la manufactura y control de calidad de los productos Ebel Paris, sino se enfocan en la imagen del producto ya terminado y los pasos a seguirse para introducirlo a los diversos mercados.

Acevedo Villalba continuó indicando que Belcorp trasmite toda esa información a las compañías filiales, ubicadas en distintas regiones del mundo, incluyendo Puerto Rico. Aclaró que Ebel International es la dueña de las compañías filiales y tenedora (holding company) de los productos de belleza y cuidado personal.

De otra parte, indicó que Ebel France, compañía filial de Ebel International y constituida bajo las leyes de

Francia, es la responsable de supervisar a los terceros que investigan, manufacturan y maquilan los productos Ebel Paris. Así, Ebel France es la que controla los abastecimientos, la logística, la operación de desarrollo, producción y control de calidad de los productos, que luego son enviados desde Francia hacia América Latina. Asimismo, explicó que el desarrollo, fabricación, maquilación y mezcla de los ingredientes se lleva a cabo entre Ebel France y varios fabricantes y proveedores, todos ubicados en Francia, y luego los productos son envasados en Colombia[7], país desde el cual se distribuyen a doce países. Sobre el particular, señaló que toda la investigación y manufactura de la esencia de sus productos es llevada a cabo por MF Productions, ubicada en Francia, y en el Centro de Biodermatologie des Laboratoires Sérobiologiques, localizado a 400 km de la ciudad de Paris.

De los contratos que obran en el expediente y del testimonio de Acevedo Villalba, surge que Ebel France contrata a terceros —compañías francesas— para la producción de bulk[8], empaque y embalaje de la fórmula abastecida por Ebel International. En dichos contratos, las partes acordaron que Ebel France era "una empresa dedicada a la representación comercial e intermediación para

---

[7] Previo al 1 de enero de 2005, los productos también eran envasados en Francia pero debido al alto costo de la mano de obra, dichas labores ahora se llevan a cabo en Colombia.

[8] Es el resultado de la mezcla de los ingredientes para crear la fórmula del producto.

operaciones de compra y venta en nombre de terceros, así como para la compra y venta por cuenta propia de todo producto para el cuidado del cuerpo, perfumería, cosméticos, productos para el cuidado del cabello, artículos ópticos, estéticos y todos aquellos productos o accesorios de lujo, incluyendo los envases y artículos de embalaje que se relacionen con estos productos."

Acevedo Villalba también señaló que, para determinar el origen de un producto, la Organización Mundial de Comercio exige que el 60 por ciento de los componentes provengan del país que alegan como origen y que el último proceso de transformación importante sea hecho en dicho país. Sobre ello, indica que más del 80 por ciento de los componentes de los productos Ebel Paris se originan en Francia y el último proceso de transformación es la maquilación, también llevada a cabo en Francia.

Por último, indicó que la procedencia de los productos Ebel Paris también es confirmada por la aprobación del Food and Drug Administration (FDA por sus siglas en inglés), agencia federal que impone requisitos estrictos para demostrar el lugar de origen de los productos Ebel Paris ––los cuales constan como "Made in France"–– antes de permitirle acceso al mercado estadounidense. Acevedo Villalba explicó que su cumplimiento con la designación del origen de los productos también se refleja en el uso de la marca Ebel por sí sola cuando se trata de productos fabricados en Chile, Colombia o Perú.

Surge del expediente que el único testigo fue Acevedo Villalba. La FIP no presentó prueba testifical.

La FIP no rebatió la aseveración de Acevedo Villalba en torno a que la esencia de los productos Ebel Paris son manufacturados en el Centre de Biodermatologie des Laboratoires Sérobiologiques, centro de investigación y desarrollo de fórmulas de cosméticos, ubicado en Francia, y que los encargados de la producción y maquilación de los productos son compañías francesas. Por el contrario, admitió que no existía controversia sobre ello.

La prueba presentada por la FIP ante el Departamento de Estado incluyó los contratos suscritos entre Ebel France y las compañías francesas antes reseñadas, así como varias resoluciones procedentes de diversos países denegando las solicitudes de registro de ciertas marcas. Sin embargo, ninguna de las resoluciones antes mencionadas trataba sobre la denegatoria del registro de la marca Ebel Paris en los países en cuestión. Además, lo resuelto en otros países no nos vincula, máxime tomando en cuenta que existen diferencias sustantivas en lo relativo a las leyes aplicables. Por el contrario, nuestro derecho marcario está íntimamente ligado a la legislación y jurisprudencia federal sobre dicho tema, la cual resulta altamente persuasiva ante la escasez de nuestra jurisprudencia al respecto.

El único argumento de la FIP es que aun cuando los productos Ebel Paris son manufacturados en Francia, no se manufacturan en Paris *per se*. Además, señala que Ebel France

es una subsidiaria de Ebel International, la cual a su vez es la tenedora de las marcas de Belcorp, por lo cual, los productos Ebel Paris le pertenecen a una corporación peruana. Tal argumento ignora que es Ebel France la responsable de todo lo relativo a la manufactura de los productos Ebel Paris, particularmente del control de calidad de éstos, la contratación de terceros encargados de crear las fórmulas, mezclar los ingredientes y asegurar que el producto terminado sea de la más alta calidad. Tales funciones no las ejerce Belcorp ni Ebel International.

En vista de que la FIP admitió que no existe controversia en torno a que el producto se fabrica en Francia, y tomando en cuenta que Ebel France, ente que maneja todo lo relativo a los productos Ebel Paris, está ubicado en Paris, existen conexiones suficientes con dicha ciudad. El hecho de que se trata de una compañía subsidiaria no altera su rol primario en la fabricación de los productos Ebel Paris. Máxime cuando Ebel International es la dueña de dicha corporación y le ha conferido tales facultades de forma exclusiva a Ebel France.

En ocasiones anteriores, hemos destacado que el testimonio de un solo testigo sobre un hecho, que le merezca entero crédito al tribunal, es suficiente para que dicho hecho quede establecido. Regla 10(d) de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV; Véase Santiago v. Méndez, 135 D.P.R. 540 (1994). Igualmente, aun cuando en asuntos de credibilidad de la prueba concedemos, de ordinario, gran

deferencia a las determinaciones de hechos efectuadas por los foros recurridos, cuando a nuestro entender, sus determinaciones no constituyen el balance más racional, justiciero y jurídico de la totalidad de la prueba presentada en el caso, es nuestro deber rechazar dicha interpretación errada, situación a la que nos enfrentamos en el día de hoy. Véase: Santiago v. Méndez, ante, Trinidad v. Chade, 153 D.P.R. 280 (2001).

Por otro lado, no hay duda que es norma reiterada en nuestro ordenamiento que las decisiones de las agencias administrativas --en vista de su conocimiento especializado y experiencia en la materia-- tienen a su favor una presunción de regularidad y corrección que debe ser respetada. La Ley de Procedimiento Administrativo Uniforme dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." Sección 4.5, 3 L.P.R.A. §2175. Evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión."

Como corolario de lo anterior, de ordinario, nuestra intervención debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente o de manera tan irrazonable que su actuación constituyó un abuso de discreción. Camacho Torres v. AAFET, res. 22 de mayo de 2006, 2006 TSPR 88; Otero v. Toyota, res. 3 de febrero de 2005, 2005 TSPR 8. Por el

contrario, "las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal." Sección 4.5 de la LPAU, 3 L.P.R.A. §2175.

No obstante lo antes expresado, estamos convencidos de que, en el caso de autos, el Departamento de Estado erró en su interpretación del derecho aplicable. Por un lado, recurrió al Artículo 5(7) de la Ley de Marcas cuando no se presentó ante su consideración una controversia sobre marcas idénticas o similares, conflictivas entre sí. Dicha errónea decisión se fundamenta en el informe del oficial examinador. Éste, en todo momento, indicó que la controversia a resolverse era si la marca Ebel Paris era geográficamente engañosa, cuando la realidad es que el asunto por resolverse era si la marca Ebel Paris era "primarily geographically deceptively misdescriptive". No aplicó correctamente la normativa aplicable al analizar si una marca es "primarily geographically deceptively misdescriptive".

Concluimos que el Departamento de Estado actuó de forma arbitraria e irrazonable al evaluar la prueba desfilada y efectuar conclusiones de derecho que distan de ser correctas. Tomando en cuenta todo lo antes expuesto y conforme lo resuelto en Posadas de Puerto Rico v. Sands Hotel & Casino, ante, resulta claro --y así lo resolvemos-- que la marca Ebel Paris no es una marca "primarily geographically deceptively misdescriptive".

V

En mérito de lo antes expuesto, procede dictar Sentencia revocatoria de la emitida por el Tribunal de Apelaciones, y ordenar el registro de la marca Ebel Paris en el Registro de Marcas del Departamento de Estado de Puerto Rico.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Federation Des Industries
De La Perfumerie

    Recurrida

       vs.                        CC-2006-717       CERTIORARI

Ebel International Limited

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 30 de noviembre de 2007

Por los fundamentos expuestos en la Opinión que antecede, la cual forma parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Apelaciones, y se ordena el registro de la marca Ebel Paris en el Registro de Marcas del Departamento de Estado de Puerto Rico.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. El Juez Asociado señor Fuster Berlingeri no intervino.

Dimarie Alicea Lozada
Secretaria del Tribunal Supremo, Interina